929 F.2d 692
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EXXON CORPORATION, Plaintiff-Appellee,
v.
WARREN GROUP LIMITED PARTNERSHIP, a Maryland Limited
Partnership, Edward J. Warren, Defendants-Appellants.
 No. 90-1793.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1991.
Decided March 28, 1991.
As Amended May 6, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Daniel E. Klein, Jr., Magistrate Judge. (CA-89-2886-HM)
 Arnold R. Silbiger, Baltimore, Md., for appellants.
 C. Lamar Garren, Piper & Marbury, Baltimore, Md. (Argued), for appellee; Kimberly A. Genua, Piper & Marbury, Baltimore, Md., Mary Lynn Hollis, Exxon Company, U.S.A., Houston, Tex., on brief.
 D.Md.
 AFFIRMED.
 Before WIDENER and MURNAGHAN, Circuit Judges, and JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 I.
 
 1
 This case arises out of a lease agreement entered into more than 30 years ago. Plaintiff Exxon Corporation ("Exxon") is the successor in interest of the lessee (Esso), and defendant Warren Group Limited Partnership ("Warren") is the successor in interest of the lessor (Greenbrook Company, Inc. ("Greenbrook")).
 
 
 2
 On December 10, 1958, Esso entered into a 20-year agreement to lease from Greenbrook the property located at 1022 Ingleside Avenue in Baltimore, Maryland. A service station was to be built on the property by Greenbrook, the lessor. The lease was to begin on July 1, 1959, and end on June 30, 1979.
 
 
 3
 Someone at Esso drafted the lease.
 
 
 4
 The lease provided for two five-year extensions, which would take effect automatically unless Esso notified Greenbrook that it chose not to extend the lease.
 
 
 5
 The lease also provided for postponing the commencement date of the lease if the service station being built on the property was not ready for operation on the date the lease was scheduled to begin. This provision, which is the crux of the case, provided:
 
 
 6
 In the event the improvements contemplated herein are not completed and possession thereof is not delivered to the Lessee ... by the time stated herein for the commencement of the original term, the original term of the lease shall automatically be extended by the number of days and months intervening between the commencement day of the term hereof as stated herein and the completion and delivery of said improvements to Lessee. Lessor shall, upon completion of said improvements and the delivery of possession thereof ..., by registered mail, notify Lessee that the premises are ready for occupancy ... and shall therein state the number of days and months by which the original term shall be extended; but in the event Lessor fails to give such notice Lessee may, by registered mail, give written notice to Lessor that it accepts such improvements and has entered into possession thereof and if Lessee therein states the number of days and months by which the original term shall be extended, such statement shall be controlling upon the parties.
 
 
 7
 The lease also gave Esso the option to purchase the property for $60,000, by notifying Greenbrook by registered mail of Esso's intention to purchase at least two days before the expiration of original term of the lease or any extension thereof. The pertinent words of that option were:
 
 
 8
 By mailing such notice by registered mail addressed as aforesaid at least two days before the expiration date of the original term or any renewal thereof and, such notice, if so mailed, shall be deemed valid and effective whether or not the same in fact is actually delivered to the Lessor.
 
 
 9
 In July of 1989, Exxon sent defendant Warren payments for rent through August 19, 1989. Warren returned Exxon's July payment and asserted that the lease had expired on June 30, 1989.
 
 
 10
 Exxon, conversely, asserted that by letter of August 26, 1959, the lease had been extended to August 19, 1989 (including two five-year extensions beginning on August 19, 1979 and on August 19, 1984, respectively). Exxon re-mailed the rent check to Warren.
 
 
 11
 Warren refused to concede that the lease had been so extended, but cashed the check. Warren gave Exxon notice to vacate, by a letter dated July 17, 1989.
 
 
 12
 On August 3, 1989, by registered mail, Exxon attempted to exercise its option to purchase. Warren refused to sell, claiming that the attempt to exercise the option to purchase was untimely.
 
 Exxon filed this suit, asking for:
 
 13
 1. a declaratory judgment that the lease ran through August 19, 1989;
 
 
 14
 2. specific performance of the sale of the rental property;
 
 
 15
 3. compensatory damages resulting from Warren's alleged breach; and
 
 
 16
 4. attorneys' fees.
 
 
 17
 Warren counterclaimed, seeking an Order of Ejectment and the fair rental value of the property from July 1, 1989 until Exxon vacated the premises.
 
 
 18
 At trial, Exxon introduced into evidence a file copy of a certified (not registered ) letter from Esso to Greenbrook, dated August 26, 1959. Warren did not question the letter's authenticity, but claims that it was never actually sent or received. No one at trial could testify from personal knowledge that the 30-year-old letter was actually sent or received, and there was no return receipt card or certified number slip in Exxon's file. The letter provided, in pertinent part:
 
 
 19
 Under paragraph 4 of our lease, no rent was to accrue until the service station was completed and, in the event such completion and possession thereof was delivered to us after July 1, 1959, the initial term of our lease was to be automatically extended by the number of days and months intervening between the commencement date of the term of the lease and the date of completion.
 
 
 20
 As the service station opened for business on August 20, 1959, this is to advise you that we accept the station as of that date and consider the original term of the lease extended until and including August 19, 1979, with the privilege of renewing said lease for two (2) additional periods of five (5) years each after that date.
 
 
 21
 At trial, a former Esso employee, Mr. Sindall, testified regarding the August 26, 1959 letter, that:
 
 
 22
 when our [Esso's] engineers had examined the station and found out it was completed and acceptable to the company, our marketing people would prepare a letter, which would be brought in to me, and I would sign it and send it to the lessor and the various departments advising them that we had accepted the station, the lease was to commence, and the rents were to be paid.... That's my signature [on the August 26, 1959 letter].... This is the standard form letter that we sent out to all lessors, you might say, advising him [sic] that we were accepting the service station and advising when we would commence paying rents.... [I am aware of] no [other] reason whatsoever [that such a letter would be sent].
 
 
 23
 (Joint Appendix at 60-61.)
 
 
 24
 No one testified that the improvements were in fact completed earlier than August 20, 1959.
 
 II.
 
 25
 The trial court[1] found that the improvements were not completed until August 20, 1959, and that therefore the lease was automatically extended to August 19, 1979 (with two options to extend for five years each), regardless of whether Esso's letter of August 26, 1959 was ever actually sent or received.
 
 
 26
 The trial court supported its finding by quoting the part of the lease which provided that:
 
 
 27
 [i]n the event the improvements contemplated herein are not completed and possession thereof is not delivered to the Lessee ... by the time stated herein for the commencement of the original term, the original term of the lease shall automatically be extended by the number of days and months intervening between the commencement day of the term hereof as stated herein and the completion and delivery of said improvements to Lessee.
 
 
 28
 (Emphasis added.)
 
 
 29
 The trial court also found that while the Lessor was obligated to inform the Lessee of the extension of the lease due to delays in construction, any notification of delays on the part of the Lessee was optional. The court supported this finding with the lease provision that stated:
 
 
 30
 Lessor shall, upon completion of said improvements and the delivery of possession thereof ..., by registered mail, notify Lessee that the premises are ready for occupancy ... and shall therein state the number of days and months by which the original term shall be extended; but in the event Lessor fails to give such notice Lessee may, by registered mail, give written notice to Lessor that it accepts such improvements and has entered into possession thereof and if Lessee therein states the number of days and months by which the original term shall be extended, such statement shall be controlling upon the parties.
 
 
 31
 (Emphasis added.)
 
 
 32
 The trial court thus found it of no consequence that the August 26, 1959 letter may never have been sent, nor that it was sent, if at all, certified mail rather than registered mail.
 
 The court held:
 
 33
 1. that the lease was automatically extended to August 19, 1979;
 
 
 34
 2. that Exxon had exercised its option to extend the lease for two additional five-year terms (until August 19, 1989); and
 
 
 35
 3. that Exxon had timely exercised its option to purchase by registered mail on August 3, 1989.
 
 
 36
 The court granted Exxon a declaratory judgment and required specific performance of the option to purchase, but declined to award compensatory damages (because Exxon suffered no compensable harm) or attorneys' fees.
 
 III.
 
 37
 On appeal, Warren argues that the lease is ambiguous, and must be construed against Exxon (the drafter).
 
 
 38
 The lease is not ambiguous: "automatically" means "having a self-acting or self-regulating mechanism"; "shall" is "used in laws, regulations, or directives to express what is mandatory"; and "may" means "have liberty to--used nearly interchangeably with can. " Webster's New Collegiate Dictionary 76, 1064, 711 (1977). These are not particularly ambiguous terms, and the trial court interpreted them properly.
 
 
 39
 Warren also argues that the August 26, 1959 letter was never sent, and that even if it was sent, it was sent certified rather than registered mail. Because the lease provides for notification of construction delays by registered mail, Warren argues that no extension took place.
 
 
 40
 We agree with the trial court's findings that the extension was automatic (as the lease says it was), and that the lessee did not have to send any letter (although the lessor was supposed to do so, and did not).
 
 
 41
 The August 26, 1959 letter, regardless of whether it was in fact mailed, provides uncontroverted evidence in support of the trial court's finding that the property was not ready for operation prior to August 20, 1959. See Joint Appendix at 59-61.
 
 
 42
 Because the property was not ready until August 20, 1959, the original lease term was automatically extended to cover the twentyyear period from August 20, 1959 through August 19, 1979, with an option on the part of lessee to extend the lease for two additional five-year terms, through August 19, 1989. The lease was so extended.
 
 
 43
 Exxon therefore had until August 17, 1989 in which to exercise its option to purchase the rental property for $60,000. Exxon timely exercised its option on August 3, 1989.
 
 
 44
 The findings of the trial court are supported by the evidence, and are not clearly erroneous. Therefore, the decision of the trial court is
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 United States Magistrate Judge Daniel E. Klein, Jr